**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| T.L., a minor, by T.L.'s parent, G.L., | ) ) ) | Civil Action No. _____ |
| Plaintiffs, | ) ) | **ELECTRONICALLY FILED** |
| v. | ) ) | |
| SOUTH ALLEGHENY SCHOOL DISTRICT, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs T.L. and G.L., by their attorneys, file this Complaint against Defendant South Allegheny School District and state the following:

### Jurisdiction and Venue

1. This action arises under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794.

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3. Venue in this District is proper under 28 U.S.C. § 1391(a).

### Parties

4. Plaintiffs T.L. and G.L. resides within the South Allegheny School District at 2034 Washington Blvd., Glassport, PA 15045.

5. South Allegheny School District is a Pennsylvania School District in Allegheny County. Defendant's address for the purposes of service is 2743 Washington Blvd., McKeesport, PA 15133.

**Factual Background**

6. T.L. was enrolled as a student at the District prior to the events described in this complaint.

7. T.L. was diagnosed with autism and attention deficit hyperactivity disorder as an elementary student and has carried these diagnoses throughout all time relevant to this Complaint.

8. The District recognizes that T.L. qualifies for special education services under the disability categories of autism and specific learning disability in the areas of reading fluency and written expression.

9. T.L. has exhibited behavioral problems associated with autism throughout T.L.'s time at the District.

10. At times relevant to this complaint, the District has recognized that T.L.'s behavioral issues interfere with his ability to learn.

11. The District recognizes that it is required to address T.L.'s behavior as part of his individualized educational plan (IEP).

12. Because T.L. is austistic, T.L. suffers impairments relating to social interactions, restricted patterns of behavior, and impediments in pragmatic skills. T.L. often appears to be disrespectful to authority figures and does not interact appropriately with others.

13. On October 18, 2013, T.L.'s mathematics teacher reported Lisa Duval, South Allegheny Middle School Principal, an incident in which she claimed that T.L. argued with her and kicked her feet.

14. In response to this report, T.L. was indefinitely removed from the school building. T.L.'s parents were informed that T.L. could return to the school after T.L. received a mental health evaluation.

15. On October 23, 2013, the District held a manifestation determination to determine whether

T.L's actions described in the mathematics teacher's report were a behavioral manifestation of T.L.'s disability.

16. The District's interdisciplinary IEP team participated in the manifestation determination and determined that T.L.'s conduct was a manifestation of T.L.'s disability.

17. The District recorded that T.L.'s alleged conduct was not the direct result of its failure to implement T.L.'s IEP.

18. Because it was determined that T.L.'s behaviors were a manifestation of T.L.'s disability, the District recognized that it was required to conduct a functional behavioral assessment and implement or modify a behavioral intervention plan. Additionally, the District recognized that T.L. would be returned to T.L.'s previous placement.

19. Despite making this determination, the District suspended T.L. for 10 days and excluded T.L. from school indefinitely, pending T.L. receiving of a mental health evaluation.

20. In addition to suspending T.L., certain District employees pursued criminal charges against T.L.

21. Upon information and belief, the District encouraged these employees to pursue criminal charges against T.L.

22. T.L. was charged with one felony, aggravated assault, and one misdemeanor, terroristic threats.

23. The charging police officer prepared a narrative that clearly states the alleged kicking incident was the result of academic frustration, which culminated with T.L. "kicking the back of [T.L.'s teacher's] feet." The narrative also states that the charges were filed at the District's request.

24. By November 2013, T.L. had not returned to school, and T.L.'s parents were concerned

about T.L.'s significant loss of educational instruction.

25. On November 4, 2013, at the instruction of T.L.'s parents, T.L. began receiving academic instruction from the Lincoln Interactive cyber school, which is affiliated with the District.

26. The cyber school platform was plagued with technological problems, which caused T.L. to receive inadequate instruction.

27. The computers provided to T.L. by the cyber school program could not perform the basic functions necessary to run the cyber school program.

28. While removed from the District, T.L. sought therapy and a psychiatric evaluation from Mon Yough outpatient services.

29. A psychiatric evaluation for T.L. was not generated until December 12, 2013.

30. Upon presenting the psychiatric evaluation to the District, T.L. was reenrolled at the District in February 2014.

31. Upon returning to the District, T.L. continued to experience behavioral problems and was frequently disciplined for those difficulties.

32. District teachers and administrators became increasingly critical of T.L.'s behaviors, punishing T.L. with negative consequences rather following T.L.'s positive behavior support plan.

33. The District's hypercritical response and increased punishment of T.L. was a result of the District's knowledge that T.L. was being monitored by a probation officer after the criminal charges were filed.

34. The District kept detailed reports of all of T.L.'s negative behavioral interactions for the purpose of building a criminal case against T.L.

35. On June 6, 2014 the District contacted the Liberty Borough Police Department and alleged

that T.L. had called his mathematics teacher (the same teacher involved in the October 18, 2013 incident) a liar and stated that she was "going to get [hers]."

36. As a result of the District's allegation, T.L. was charged with a felony count of intimidation of witnesses for victims. The charging officer was the same officer that responded to the October 18 incident.

37. T.L. returned to the District for the 2014-2015 school year.

38. The District continued to monitor T.L.'s behavior in a manner designed to impart excessive discipline without properly addressing T.L.'s behavioral needs.

39. In the winter of 2014, District representatives suggested to T.L.'s parents that T.L. attend the New Story School.

40. The District also informed the T.L.'s parents that, if New Story did not provide an adequate educational program that suited the needs of T.L.'s family, T.L. would be welcomed back as a student at the District.

41. T.L.'s parents accepted this suggestion and enrolled T.L. in the New Story School.

42. T.L.'s placement at the New Story School was not proper because the program offered by the school was too restrictive for T.L.'s needs.

43. The New Story School was unable to provide T.L. an age-appropriate curriculum that properly addressed T.L.'s educational deficits.

44. T.L. was educated in classrooms at the New Story School with peers that were much older and much younger than T.L.

45. Some students there were very aggressive and threatened to harm T.L.

46. T.L. received little to no educational benefit while attending the New Story School.

47. T.L.'s parents frequently and consistently complained to the District regarding the inadequate

instruction that T.L. was receiving while enrolled at New Story.

48. Despite knowing that T.L. was not receiving adequate academic instruction and behavioral support at New Story, the District ignored the requests of T.L.'s parents to transition T.L. back to the district.

49. To this day, the District has not responded to the requests of T.L.'s parents.

50. To obtain an adequate educational placement, T.L.'s parents placed T.L. in a private religious school for the 2015-2016 school year.

51. T.L.'s parents must pay significant tuition for T.L. to attend this private religious school.

52. As of the date of this Complaint, T.L. is performing very well at the private school.

### Count I: Disability Discrimination
Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, and
Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

53. T.L. is disabled within the meaning of the Americans with Disabilities Act and Section 504. T.L. suffers from autism and attention deficit hyperactivity disorder, has a record of such impairments, and is regarded by Defendant as having such impairments.

54. T.L.'s impairments substantially limit T.L.'s major life activities, including T.L.'s ability to concentrate and learn.

55. Despite these impairments, T.L. is otherwise qualified to participate in school activities at the District.

56. Defendant is a Pennsylvania public school district that receives federal financial assistance.

57. Defendant was aware that T.L. was able to attend and participate in school at the District with reasonable accommodations for his disabilities.

58. Defendant discriminated against T.L. by excluding T.L. from attending school there, refusing to allow T.L. to return to school there, and failing to provide T.L. an appropriate education and accommodations for his disabilities.

59. Defendant acted with deliberate indifference to T.L. in discriminating against T.L. on the basis of his disability as described above.

60. At all relevant times, Defendant was aware that if it did not provide T.L. reasonable accommodations and allow him to return to school, T.L. would not receive an appropriate education.

61. As a result of Defendant's deliberate indifference, T.L. did not receive a free and appropriate education and was forced to enroll in a private school.

**Prayer for Relief**

Plaintiff seeks judgment against Defendant for the following:

62. A judgment declaring that Defendant illegally discrimination against Plaintiff on the basis of his disability;

63. Compensatory damages in an amount to be determined at trial;

64. Costs to bring this action, including attorneys' fees and expenses; and

65. All other relief as the court may deem just and proper.

Respectfully submitted,

*/s/ Alex J. Barker*
Alex J. Barker, Esquire
PA I.D. No. 316871
Christopher N. Elnicki, Esquire
PA I.D. No. 317000
STEELE SCHNEIDER
428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile